UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CHARIE D. OLSON,

              Plaintiff,

    v.

ASI STAFFING, INC.,

              Defendant

No. CV 04-1086-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Charie Olson brings claims against Defendant ASI Staffing, Inc. ("Adecco") for defamation and for workers' compensation discrimination under Oregon law. Before the court is defendant's motion for summary judgment. As set forth below, the court finds plaintiff has failed to raise a genuine issue of fact with respect to any material issue on her claims. Accordingly, defendant's motion for summary judgment (#19) is GRANTED, and plaintiff's case is dismissed with prejudice.

## I. Facts[1]

Adecco is a nationwide company that places nearly 140,000 of its own employees – referred to as "associates" – on temporary assignments with its clients. Olson applied for employment with Adecco at its Wilsonville, Oregon office on December 19, 2003. Adecco asks all job applicants whether they have ever been convicted of a felony or a misdemeanor. Conviction of a crime involving theft in the last five years renders an applicant ineligible for work at Adecco. Some of Adecco's clients require Adecco associates to pass a formal criminal background check before being placed with them.

Olson had a criminal record and was on probation for misdemeanor theft and false reporting at the time she filled out her application. Olson had been convicted for having sold her children's medical equipment, which was leased by Medicaid, and then falsely reporting to the police that the equipment had been stolen.

When Olson filled out the application, she understood that if she made any false statement or omission she could be fired or ineligible for employment at Adecco. In response to the question "Have you ever been convicted of a felony or misdemeanor?" Olson checked both the "Yes" and "No" boxes. In response the question "If yes, please state the nature of the crime(s), when and where convicted and the disposition of the case," Olson wrote:

> Spokane I was acused [sic] of mailing something but because they couldent [sic] find the people who did mail it, I just took the blaim [sic] I reported it as missing so I also got for false reporting it as I am very sorry I was told I didnt [sic] have to claim it as a felony or misdemeanor.

---

[1] On Defendant's motion for summary judgment, these facts are recounted in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Adecco hired Olson and assigned her to work at Nike, repacking shoes. Nike does not knowingly accept any Adecco associates convicted of theft or crimes of dishonesty.

On February 5, 2004, Olson injured her finger in a failed attempt to lock a bathroom stall with a broken lock. Olson made a claim for workers' compensation, and her claim was accepted. Olson was off work for about a week, after which Adecco placed her on light duty assignments at the Adecco offices and elsewhere while she recovered from the injury. Olson's light duty work instructions included "avoid forceful repetitive gripping" and a lifting restriction of five pounds.

As one of Olson's light duty assignments, Olson was required to stuff a thousand or more envelopes at Oregon Associated Nursery ("OAN"), which she felt violated her doctor's restriction prohibiting repetitive movement. Olson told her supervisors that stuffing the envelopes hurt, but did not tell them that she felt the work was inconsistent with her doctor's limitations. Olson's supervisors advised her to be more careful, but continued to send Olson to OAN to stuff envelopes a number of times.

At other times during Olson's light duty work, Adecco assigned Olson to light office work in the Adecco Wilsonville office as an "office assistant." As part of her work at the Wilsonville office, Olson was required to get lunches for co-workers and take their personal mail to the mailbox. She was also occasionally asked to get donuts. At some point during her work at the Wilsonville office, office supervisor Deena Hemphill referred to Olson as "Peach." During this time, Olson also overheard Hemphill and Client Service Manager Carrie Collins discuss another Adecco associate, Laura Vogt, whom they believed was "milking" the workers' compensation system. The two agreed that Vogt would be fired when her light duty was up.

Olson found her treatment at the Wilsonville office so distasteful that she asked her doctor to release her early so she could go back to work.

Olson was released to full duty on May 6, 2004. The next day, Adecco's Office Coordinator Katie Ouellette informed Olson that Adecco wanted to place her in a job at Xerox. Xerox requires criminal background checks for all Adecco associates. Ouellette told plaintiff she could start her position at Xerox after completing a drug test and criminal background check. In response, Olson told Ouellette "something might come up on my background check." She informed Olson that she had pleaded guilty to and was convicted of theft and was currently on probation.

Following that conversation, Ouellette checked Olson's file to see if Olson had disclosed her criminal conviction on her application. Ouellette saw that Olson had checked both the "Yes" and the "No" boxes on the criminal conviction question, and noticed that Olson's explanation did not mention a theft conviction. Ouellette told her supervisor, Carrie Collins, and asked her what to do. Collins told Ouellette to call Adecco's Employee Relations Manager, Zuzet Menendez, an Adecco employee in New York responsible for advising Adecco offices on employee relations issues. Menendez told Ouellette that because of the conviction for theft and Olson's failure to disclose the conviction, Olson could no longer be placed with Adecco clients. After Menendez directed Ouellette to terminate Olson, Ouellette told Menendez that Olson had a pending workers' compensation claim. Menendez told Ouellette to proceed and that the workers' compensation claim was irrelevant.

After speaking with Menendez, Collins instructed Ouellette to make a note in Olson's file that Olson was ineligible for placement due to a conviction for theft and for falsifying her

application. Ouellette made the following entry in Adecco's nationwide employee database:

> Charie was offered a position at Xerox. When I told her that she
> was going to need a background check, she told me that something
> might come up on it. Then she explained to me that she is
> currently on probation for a misdemeanor on Theft charges. On
> her application, she checked both the yes and no boxes when asked
> if ever convicted. The explination [sic] given on the application
> has nothing to do with the theft charges. She is now a DNU[2] for
> both not meeting Adecco standards and for falsifying information
> on her application.

Prior to the filing of this action, only three individuals were aware of this notation: Ouellette, Collins and Office Manager Jeannie Sermon. Adecco never assigned Olson to another position.

Olson brought suit in Oregon state court asserting a claim for defamation and a claim for workers' compensation discrimination under Or. Rev. Stat. Chapter 659A. Adecco subsequently removed, invoking this court's diversity jurisdiction.

## II.  Summary judgment standard

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Evaluating whether a genuine issue of material fact exists requires the court to view the record in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255.

---

[2] "DNU" stands for "Do Not Use," and is used at Adecco to identify associates who should not be placed with Adecco clients.

## III. Workers' Compensation Discrimination

"[W]hen entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule." *Snead v. Metropolitan Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001). To succeed on Olson's claim that she was discriminated against for seeking workers' compensation benefits, Olson must first establish a prima facie case of retaliation by showing: (1) that she invoked the workers' compensation system; (2) that she was thereafter subjected to an adverse employment action; and (3) that a causal link existed between Olson's invocation of her workers' compensation rights and the subsequent adverse action. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2204). If Olson establishes a prima facie case, the burden shifts to Adecco to offer a legitimate, non-discriminatory reason for the adverse employment action. Olson then bears the burden of establishing that Adecco's proffered reasons are a pretext for discrimination.

The parties have not employed this framework in their briefing, instead apparently relying on Oregon law. Because Oregon courts require only that a plaintiff state a prima facie case of retaliation,[3] the parties have not analyzed the other two prongs of the *McDonnell-Douglas* analysis. The parties' briefing is nevertheless sufficient in this case, however, because Olson has failed to state a prima facie case.

Olson's complaint alleges defendant subjected her to injured worker discrimination by: (1) subjecting her to a hostile work environment while she was assigned to light duty work; (2) refusing to allow her to continue to work in the Adecco Wilsonville office after she was

---

[3] *See, e.g., Williams v. Freightliner*, LLC, 196 Ore. App. 83, 89, 100 P.3d 1117 (2004).

released to full duty; (3) refusing to return her to her previous assignment at Nike after she was released to full duty; (4) refusing to reinstate her to an alternative assignment after she was released to full duty; and (5) terminating her employment with Adecco.  As described below, Olson has not raised triable issues of fact regarding whether she was subjected to a hostile work environment, or whether she suffered an adverse employment action as a result of Adecco's refusal to allow her to continue to work in the Adecco Wilsonville office after she was released to full duty.  Olson has also failed to raise a genuine issue of material fact regarding whether a causal link exists between Olson's invocation of the workers' compensation system and Adecco's refusal to assign her to other employers following her return to full duty.  Accordingly, Olson's claim for workers' compensation discrimination fails.

      A.      **Hostile work environment**

A hostile work environment is actionable when it is "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Fred Meyer, Inc. v. Bureau of Labor and Indus.*, 152 Or. App. 302, 305, 954 P.2d 804 (1998); *Garcez v. Freightliner Corp.*, 188 Or. App. 397, 408, 72 P.3d 78 (2003) (analyzing Title VII); *Mains v. II Morrow Inc.*, 128 Or. App. 625, 634, 877 P.2d 88 (1994) (federal cases are instructive because Title VII was the basis for Oregon law).  The severity of the alleged harassment is judged objectively – i.e., from the perspective of a reasonable person considering the totality of the circumstances.  *Meltebeke v. Bureau of Labor and Indus.*, 322 Orr. App. 132, 142, 903 P.2d 351 (1995). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1109 (9th Cir. 2000).

Olson alleges Adecco subjected her to a hostile work environment by requiring her to

PAGE 7 - OPINION AND ORDER

work beyond her work restrictions, despite management's knowledge that such assignments hurt her hand.[4]  Olson also argues she was "indirectly threatened with her job, by being allowed to overhear comments about an injured co-worker . . . being fired as soon as she was released from light duty."[5]  Olson further complains Adecco subjected her to a hostile work environment while on light duty by requiring her to get co-workers' lunches, to take their personal mail to the mailbox and, occasionally, to get donuts – tasks which Olson characterizes as "demeaning and belittling."[6]  Confusingly, Olson also argues she was abused by Adecco's attempt to place her at Xerox after her release to full duty, rather than allowing her to finish out the week at the Wilsonville office – despite her claim that she was treated so badly at the Wilsonville office that "she told her doctor to release her early so she could go back to work."  Finally, Olson claims she was demeaned and humiliated when at some point Hemphill referred to her as "Peach."

  Assuming the truth of these allegations and viewing them in the light most favorable to Olson, no reasonable juror could conclude this conduct was so severe or pervasive as to alter the conditions of Olson's employment and create an objectively abusive working environment.  As a matter of law, Olson simply has not alleged the kind of extreme conduct that constitutes a hostile work environment.  *Compare Kortan v. California Youth Authority*, 217 F.3d 1104, 1110-11

---

[4] Olson offers no competent evidence that her work ever actually exceeded her light duty restrictions.  Moreover, Olson testified at deposition that she never informed her supervisors of her belief that the work exceeded those restrictions.

[5] The only evidence in the record on this point is Olson's deposition testimony that she heard from across the room a conversation between Hemphill and Collins discussing their intention to terminate Vogt.  There is no evidence that this conversation constituted a threat toward Olson, indirect or otherwise.

[6] It is also undisputed, however, that there was insufficient work at the Adecco offices to keep Olson busy throughout the day, leaving Olson idle for periods ranging from fifteen minutes to half a day.

PAGE 8 - OPINION AND ORDER

(9th Cir. 2000) (granting summary judgment where plaintiff failed to raise a triable issue about whether the offensive conduct was frequent, severe or abusive enough to interfere with plaintiff's employment); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-44 (9th Cir. 2003) (same); *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1989) (repeated vulgarities, sexual remarks, and requests for sexual favors sufficiently severe and pervasive to alter the terms and conditions of plaintiffs' employment); *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir. 1998) (same). Accordingly, Olson cannot rely on an alleged hostile work environment as an adverse employment action in support of her prima facie case of discrimination.

### B. Adecco's refusal to allow Olson to remain at the Wilsonville office

As discussed above, Olson's claim that she suffered an adverse employment action when Adecco refused to allow her to finish out the week at the Wilsonville office after being released from light duty directly contradicts her claim that she was desperate to escape that office and return to a full duty position. In any event, Olson has offered no evidence from which a juror could conclude that attempting to place Olson in a full duty position after she was released from light duty constituted an adverse employment action. Rather, it is undisputed that Adecco's policy is to place an associate with an Adecco client following the associate's release from light duty. This claim therefore cannot constitute an adverse employment action for the purposes of establishing Olson's prima facie case.

### C. Adecco's refusal to reinstate Olson

Olson argues Adecco violated Or. Rev. Stat. § 659A.046(1) by refusing to place her in an "available and suitable" position after her release from light duty. That section provides:

> A worker who has sustained a compensable injury and is disabled

> from performing the duties of the worker's former regular
> employment shall, upon demand, be reemployed by the worker's
> employer at employment which is available and suitable.

This argument appears to relate to Olson's allegation that "despite the availability of suitable positions . . . . Defendant assigned her to work that exceeded her restrictions . . . and assigned her demeaning work rather than available work that was more similar to her former position." The evidence cited in support of these allegations makes clear that they relate to Olson's light duty assignments while she was disabled from her former position. However, Olson has not provided any evidence substantiating the existence of other available positions within Olson's light duty restrictions,[7] nor offered any non-conclusory argument that her light duty assignments were not "suitable."

More importantly, Olson's complaint does not allege that she suffered discrimination as a result of Adecco's failure to assign her to a suitable light duty position. Rather, the complaint alleges that Adecco discriminated against Olson by "refusing to return her to her previous assignment at Nike *after she was released to full duty*," and by failing "to reinstate her to an alternative assignment *after she was released by her physician to return to full duty*." Olson therefore cannot rely on Adecco's alleged failure to provide her suitable light duty work as an adverse employment action for purposes of establishing her prima facie case.

To the extent Olson rests her claim on Adecco's failure to place her with Nike or another employer following her release from light duty, Olson's claim falls under Or. Rev. Stat. § 659A.043(1), which provides for reinstatement of an injured worker "to the worker's former

---

[7] The only evidence Olson cites in support of this contention relates solely to Adecco's failure to place her in another position after her release for full duty.

PAGE 10 - OPINION AND ORDER

position . . . if the position exists and is available and the worker is not disabled from performing the duties of such position." Under the regulations implementing that section, the employee must be "qualified" to perform the former position in order for that position to be considered "suitable." Or. Admin. R. 839-006-0145(1). A "qualified" worker is one who "meets minimum standards used by the employer to fill the position." Or. Admin. R. 839-006-0145(2)(a).

The undisputed evidence shows Adecco attempted to reinstate Olson to a full duty position following her return from light duty. Only after Olson informed Adecco that she had an undisclosed criminal conviction for theft did Adecco cease to attempt to assign Olson to another employer. It is also undisputed that Adecco's policy is not to hire or place any associate who has a conviction for theft within the last five years. Neither will Adecco place any associate who fails to disclose a criminal conviction on her employment application. In sum, Olson did not meet Adecco's minimum standards for an associate, and therefore was not entitled to reinstatement as a matter of law.

Olson has likewise failed to raise a genuine issue of material fact by arguing that Adecco inconsistently applied its policies regarding criminal convictions. Olson notes that, prior to her injury, Adecco had placed her with other businesses despite her criminal conviction, and argues that "[n]ot until after Plaintiff suffered an on-the-job injury and filed a workers' compensation claim, did Plaintiff's criminal record become an issue." However, it is undisputed that Olson did not disclose that she had been convicted of theft in her application, and that she first informed Adecco of this fact after Adecco attempted to place her at Xerox. Moreover, it is undisputed that the Adecco manager who made the decision to place Olson on the "Do Not Use" list, Zuzet Menendez, had no knowledge of Olson's workers' compensation claim at the time that decision

was made. Absent any evidence that the decision-maker was motivated by a discriminatory intent, Olson cannot rely on this employment action as evidence of discriminatory treatment. *See, e.g., Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (granting summary judgment against plaintiff's discrimination claim where plaintiff failed to offer any evidence from which a reasonable factfinder could determine the decision-maker was motivated by a discriminatory intent).[8] Accordingly, Olson has failed to create any genuine issue of material fact regarding whether a causal link existed between her invocation of the workers' compensation system and Adecco's refusal to assign her to other employers following her return to full duty.

### D. Conclusion

Olson has not raised triable issues of fact regarding whether she was subjected to a hostile work environment, or whether she suffered an adverse employment action as a result of Adecco's refusal to allow her to continue to work in the Wilsonville office after she was released to full duty. Olson has also failed to raise a genuine issue of material fact regarding whether a causal link exists between Olson's invocation of the workers' compensation system and Adecco's refusal to assign her to other employers following her return to full duty. Accordingly, Olson's

---

[8] Olson relies on *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999) and *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 883 (9th Cir. 2003) for the proposition that Menendez's lack of knowledge of Olson's workers' compensation claim "does not relieve Defendant of liability for the discharge itself because Ms. Menendez acted only after being prompted by Ms. Ouellete." The *Vasquez* court expressly distinguished *Gilbrook* on the grounds that it "addressed a claim of *First Amendment* retaliation using a mixed motive analysis, not a Title VII claim." *Vasquez*, 349 F.3d at 641 (emphasis in original). Like *Gilbrook, Ostad* is a First Amendment retaliation case that addressed whether a plaintiff could state a claim against a *subordinate* who retaliated against him, despite the fact that the employer ultimately took its adverse employment action based on non-discriminatory reasons. Olson's claim does not raise an issue of subordinate liability.

claim for workers' compensation discrimination is dismissed.

IV. **Defamation**

Olson claims she was defamed when Ouellette entered a notation in Adecco's nationwide database indicating Olson had been placed on its Do Not Use list for "falsifying information on her application." To establish a claim for defamation, Olson must prove: (1) that Adecco made a defamatory statement about her; (2) that the statement was false; and (3) that the statement was communicated to a third party. *Lansford v. Georgetown Manor, Inc.*, 192 Or. App. 261, 269, 84 P.3d 1105 (2004); *Reesman v. Highfill*, 327 Or. 597, 603, 965 P.2d 1030, 1034 (1998). Adecco responds that Olson has not raised a genuine issue of material fact regarding whether the statement was false and that, in any event, the communication was privileged.

A. **The communication's truth**

Olson argues Ouellette's statement that Olson had "falsif[ied]" the information on her application is capable of carrying the defamatory implication that she did so intentionally. Olson offers sworn testimony that she did not intentionally falsify her application and argues Oullette's statement was therefore false. In support of her contention, Olson cites Oregon case law holding that if the court determines the communication "*is capable* of a defamatory meaning . . . the matter is then submitted to the jury for a determination of whether [the] defamatory meaning *was understood* by the recipients." *Beecher v. Montgomery Ward & Co.*, 267 Or. 496, 500, 517 P.2d 667 (1973) (emphasis in original); *see also Bendl v. Parks*, 164 Or. App. 699, 703-04, 994 P.2d 802 (2000).

The case law on which Olson relies relates only to the issue of whether a statement can be considered defamatory, not whether the statement is true. For example, the defendant in

PAGE 13 - OPINION AND ORDER

*Beecher* argued that its *false* statement that plaintiff was delinquent on a debt he owed to defendant was not capable of carrying a defamatory meaning. The court determined the statement could have been understood "as being derogatory of plaintiff's credit," and was therefore properly submitted to the jury. There was no question in *Beecher* regarding the truthfulness of the defamatory statement.

In the instant case, Adecco argues not that the statement was not defamatory, but that the statement was true. There is no genuine issue regarding the fact that Olson's application contained both affirmative misrepresentations (e.g., checking the "no" box in response to a question regarding whether she had been convicted) and material omissions (e.g., failure to disclose the theft conviction in her explanation). As a result, Olson has failed to raise a triable issue regarding whether she was falsely defamed.

The only way to avoid this conclusion is, as Olson urges, to insert the word "intentionally" before the word "falsifying" in Ouellette's statement. In fact, the statement makes no suggestion regarding whether the falsification was intentional or innocent, nor was such a judgment necessary for Adecco's purposes. It is undisputed that it is Adecco's policy to consider any failure to disclose a criminal conviction on an employment application a falsification of the application and grounds for immediate termination. Thus, in referring to Olson's failure to disclose her theft conviction on her application as "falsifying" the application, it is undisputed that this statement accurately reflected Adecco policy.

  B.  Privilege

In addition to being true, Ouellette's defamatory statement was privileged under Oregon law. Oregon law recognizes a qualified privilege protecting three types of statements:

(1) statements made to protect the interests of a defendant; (2) statements made to protect the interests of plaintiff's employer; or (3) statements made on a subject of mutual concern to defendant and the persons to whom the statement was made. *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 170, 47 P.3d 8 (2002), citing *Wattenburg v. United Medical Lab.*, 269 Or. 377, 380, 525 P.2d 113 (1974). A defendant who proves a qualified privilege is entitled to summary judgment unless the plaintiff proves that the defendant abused the privilege. *Wallulis v. Dymowski*, 323 Or. 337, 348, 918 P.2d 755 (1996); *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 356, 563 P.2d 1205 (1977) (granting summary judgment where plaintiff failed to present sufficient evidence to show defendant abused the qualified privilege).

In the instant action, the statement at issue falls under each of the three different bases for qualified privilege. Adecco has a clear interest in ensuring that it does not place associates with criminal convictions – particularly for theft – with employers, and Oregon courts routinely apply the qualified privilege to internal corporate communications regarding employees. *Wallulis*, 323 Or. at 350-51 (qualified privilege applies to a defamatory work-related statement made by an employee to the employee's supervisor concerning another employee's work performance); *see also Wilson v. Dollar Tree Stores, Inc.*, 2004 WL 1381209 (D. Or. 2004) (defendant entitled to summary judgment because qualified privilege applied to defendant's communication regarding the reasons for plaintiff's termination).

Olson argues, however, that Adecco abused the privilege:

> The privilege may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not

reasonably believed to be necessary to accomplish the purpose.[9]

Olson argues Adecco abused the privilege in each of these ways.

> 1. **Publishing matter not reasonably believed necessary to accomplish the purpose of the privilege**

Olson argues Adecco supervisors need only know that an associate is designated Do Not Use; they need not know why. Olson therefore claims Ouellette's inclusion of the statement that Olson had been designated Do Not Use for falsifying her employment application was not necessary to accomplish the purpose of ensuring that Olson received no further assignments.

The only evidence Olson offers in support of the contention that publishing the "falsifying" statement was not necessary is the testimony of Adecco Office Supervisor Jeannie Sermon. What Olson does not offer, however, is any evidence that Ouellette did not reasonably believe the statement was necessary to protect Adecco's interests. *See Lund v. Arbonne Intern., Inc.*, 132 Or. App. 87, 96-97, 887 P.2d 817 (1994) ("To show that defendants lacked a reasonable belief in the truth of their statements, plaintiff had to offer evidence creating a question of fact as to the mental states of defendants at the time they made the statements."). Accordingly, Olson has not raised a genuine issue of material fact regarding whether Ouellette published matter she did not reasonably believe was necessary to serve the purpose of the privilege.

> 2. **Publishing to persons not reasonably believed necessary to accomplish the purpose**

Olson claims that "by making the defamatory statement on a nationwide database that anyone can access, a jury could find that defendant published the defamatory statements to

---

[9] *Benassi v. Georgia-Pacific*, 62 Or. App. 698, 703, 662 P.2d 760 (1983).

PAGE 16 - OPINION AND ORDER

persons not reasonably believed necessary to accomplish this purpose."[10]  Olson appears to argue that only the supervisor of the local office in which Olson resides needs to have access to such information, but offers no evidence from which a jury could come to that conclusion.  In fact, the only evidence in the record supports a contrary conclusion.  Adecco's Employee Relations Manager, Zuzet Menendez, testified at her deposition that Adecco maintains associate information on its database:

> [b]ecause we are a large company around the United States.  You may have associates who actually work out of several offices around the United States.  So probably the most common example is if you have a person who is in Florida who is moving to California, they may walk into a California office and state, "Hey, I've worked for Adecco before."

More importantly, Olson again has cited no evidence from which a jury could determine that Ouellette did not reasonably believe it was necessary to place the disputed notation in Adecco's database.  Accordingly, Olson has failed to raise a genuine issue of material fact on this issue.

    3.    **Publishing for a purpose other than that for which the privilege was given**

Olson argues a jury could find that Ouellette published the "falsifying" statement not to protect Adecco's interests, but to facilitate Olson's discriminatory termination for having invoked the workers' compensation system.  This argument fails for the same reasons Olson's discrimination claim fails.

---

[10] Contrary to Olson's claim that "anyone can access" Adecco's database, the undisputed evidence shows Adecco's database was accessible only to Adecco managers and supervisors who have the discretion to place associates.

### 4. Ouellette lacked reasonable grounds to believe the truth of the statement

Olson's argument that a jury could find Ouellette lacked reasonable grounds to believe the truth of the statement fails because, as noted above, the statement was true.

## V. Conclusion

For the aforementioned reasons, the court finds plaintiff has failed to raise a genuine issue of fact with respect to any material issue on her claims. Accordingly, defendant's motion for summary judgment (#19) is GRANTED, and plaintiff's case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this __3rd___ day of August, 2005.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge